# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARRI STAPLES, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case No. CIV-07-1169-RO ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Sharri Staples ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. Both parties to the proceeding have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of judgment. Upon review of the pleadings, the record ("Tr."), and the parties' briefs, it is the opinion of this court that the Commissioner's decision should be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her applications seeking disability insurance benefits and supplemental security income payments in January, 2006 [Tr. 12 and 65 - 68]. She alleged that a back injury and ruptured discs – which would require surgery – required her to use a cane and resulted in pain and loss of feeling on the left side of her body and in difficulty with walking, standing, sitting, lifting, and sleeping, all of which

became disabling as of June, 2002 [Tr. 96]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 24 - 28, 29 - 32, 38 - 40, and 41 - 43]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted an April 2007 hearing where Plaintiff, who was represented by counsel, Plaintiff's mother, and a vocational expert testified [Tr. 44 and 239 - 270]. In his May 2007 decision the ALJ found that while Plaintiff was unable to perform her past relevant work, she retained the capacity to perform other generally available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 12 - 19]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 6], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail).  Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.  *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claim of Error**

Plaintiff's single claim of error is that "[t]he ALJ failed to consider and incorporate [Plaintiff's] use of a cane." [Doc. No. 21, p. 5].

**Analysis**

3

Contrary to Plaintiff's claimed error, there is no question that the ALJ considered Plaintiff's use of a cane along with her testimony that the cane was prescribed by her doctor [Tr. 16, 18, 259 - 260, and 263 - 264]. The ALJ did not, however, incorporate any restriction inherent with the use of a cane in his assessment of Plaintiff's residual functional capacity ("RFC")[1] or in any hypothetical questions to the vocational examiner. The question on review is whether he should have done so.

In explaining how he formulated Plaintiff's RFC – occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand/walk for at least six hours in an eight hour workday; sit at least six hours in an eight hour workday; and, occasionally climb, balance, stoop, kneel, crouch and crawl [Tr. 14] – the ALJ described Plaintiff's history of back and leg difficulties [Tr. 16 - 17] and the subsequent lumbar fusion performed in February, 2006 to resolve her lumbar radiculopathy complaints [Tr. 17, 154 - 157 and 184 - 185]. Plaintiff was discharged several days after the lumbar surgery and was ambulating well; she was prescribed Lortab and Flexeril and was instructed to wear an easy wrap brace [Tr. 17 and 150 - 151]. When Plaintiff was seen on follow-up in March, 2006, it was noted that "her back pain and her root pain have all improved, although she still has residual nerve-root involvement." [Tr. 17 and 172]. Her physician further noted Plaintiff's report that she was using a walker "but feels that she is getting better every day and is developing more and more

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

stamina." *Id.* Plaintiff's postoperative x-rays revealed "an excellent construct." *Id.* and Tr. 17.

With respect to the next chronological medical records, the ALJ found that

> On April 20, 2006, a state Disability Determination Service medical consultant reviewed the medical evidence of record and found the claimant would be able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant would be able to sit, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday. She could occasionally climb, balance, stoop, kneel, crouch and crawl. On July 20, 2006, another medical consultant made an independent review of the medical evidence and concurred with the previous assessment.

[Tr. 17, record references omitted].[2]

Despite her surgery, Plaintiff continued to experience pain; the ALJ summarized the medical evidence relating to her continued treatment in the following manner:

> The claimant presented to Robert J. Wienecke, M.D.[3] on May 10, 2006 for a follow up examination due to post-operative left leg pain. She reported leg pain similar to its pre-operative state but felt her back pain was stable. A CT myelogram was performed and revealed well placed instrumentation and no evidence of ongoing nerve root compression. The grafts appeared to be incorporating well and there was nice interbody fusion L5-S1. X-rays of the lumbar spine revealed no evidences of instrumentation failure or loosening. Dr. Weinecke reported no obvious surgical remedy and continued treating the claimant with narcotic medications. He further opined the claimant should improve with time and prescribed physical therapy.
>
> The claimant underwent aquatic physical therapy at the Enid Therapy Center July 11, 2006 through October 16, 2006. Kayli Means, P.T. noted on August 23, 2006 continued positive left leg raising tests and strength deficits in

---

[2]This evidence supplied by the State agency medical consultants supports the ALJ's RFC assessment. *See* 20 C.F.R. §§ 404.1527(f) and 416.927(f).

[3]Dr. Wienecke performed Plaintiff's surgery [Tr. 154].

comparison to the right leg. However, she further reported a slight improvement with tolerance to activity, increased hip flexibility, and increased tolerance to activities of daily living. At discharge, on October 16, 2006, the record indicates the claimant had improved range of motion, increased strength, minimal functional change, and had partially achieved her goals.

Throughout the claimant's physical therapy, she was reevaluated by Dr. Pelofsky.[4] On July 31, 2006, Dr. Pelofsky noted the claimant was slowly and steadily improving. He reported the claimant was taking very little, if any, narcotic and is mainly using extra strength Tylenol. X-rays showed excellent construct at L5-S1. On August 29, 2006, the claimant had no signs of an active radiculopathy or myelopathy. Dr. Pelofsky noted she was increasing her daily activities. On December 27, 2006, Dr. Pelofsky reported the claimant's overall pain syndrome was decreasing and she uses a cane to walk. The claimant still had no signs of an active radiculopathy or myelopathy and she stated she was pleased with the results of her surgical intervention so far.

*Id.* (record references omitted).

Following his review of the medical evidence and upon consideration of Plaintiff's subjective complaints,[5] the ALJ concluded that he did not discount all of Plaintiff's

---

[4]Dr. Pelofsky assisted with Plaintiff's lumbar fusion [Tr. 154].

[5]The ALJ's decision set out a summary of Plaintiff's testimony:

The claimant testified to having a ruptured disc in her back which led to lumbar fusion. She stated she has muscle spasms, left leg numbness, and constant back pain. The claimant testified that she is unable to climb stairs and her condition is not changed by her medication. She stated her medications do not create any side effects. The claimant testified she uses an ice pack machine twice a week for the pain, tingling and burning sensations. She testified she goes to bed at 10:00 p.m. and get up at 7 a.m., but only sleeps 5 hours. She stated she gets up and takes care of her personal needs, gets her son ready for school, prepares meals, does dishes, and other household chores with the assistance of her husband. The claimant testified she is unable to vacuum but she is able to drive, shop, watch television, and read. She stated she goes to visit her mother, to church, and her hobbies include ceramics.

complaints, finding that "[i]n view of her history of degenerative disc disease, radiculopathy, and status post lumbar fusion, she would undoubtedly have difficulties." [Tr. 18]. Nonetheless, he noted that Plaintiff's "treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously mentioned restrictions[,]" *id.,* and specifically observed that one of her physicians was encouraging her to engage in walking and low back exercise programs. The ALJ also specifically found that, "The claimant testified she walks with a cane, but after a thorough review of the medical evidence a prescription for the cane was not found." *Id.*

On appeal, Plaintiff does not – and, based upon this court's review, cannot – maintain that the medical records contain a prescription for a cane. Instead, Plaintiff's theory is that "the administrative record fails to provide any evidence which would indicate that the Claimant should not or was not using a cane [and that c]onsequently, the substantial evidence of record contained within the administrative record supports a finding that the Claimant required the use of a cane." [Doc. No. 21, p. 7].

---

> The claimant testified that she can lift 5-7 pounds, stand 10-20 minutes, walk 30 minutes and sit 30 minutes (out of an 8-hour day). She stated she needs to lay [sic] down the rest of the time if she is not trying to work around the house. The claimant testified she is unable to bend over and touch her knees or toes and picks items up off the floor with "reachers." She stated she can climb stairs, contrary to her testimony earlier in the hearing, but she reported it takes a long time. She further testified that she loses her balance 2-3 times a day. The claimant testified she uses a cane prescribed by her doctor.

[Tr. 16].

In support of this theory, Plaintiff contends that she testified that she used a walker for about six months after her surgery, *id.* at p. 6, citing Tr. 260, and that Dr. Pelofsky noted on March 22, 2006, that Plaintiff was still using a walker. *Id.,* citing Tr. 172. This, however, establishes nothing more than the fact that Plaintiff chose to use a walker after her surgery and that her physician observed that use. Next, Plaintiff maintains that she testified that she then began using a cane, *id.,* citing Tr. 260, that she was instructed to do so by Dr. Pelofsky and, that the medical notes corroborate her testimony. In this regard, she points to Dr. Wienecke's statement on June 6, 2006, about nerve damage and obtaining a temporary handicap placard for Plaintiff. *Id.,* citing Tr. 202. Once again, Dr. Wienecke's statement made less than four months post-surgery that Plaintiff's left leg pain could represent nerve damage – a condition he expected to improve over the two years following surgery – and the fact that Plaintiff was given a temporary handicap placard simply does not equate with instructions from Dr. Wienecke to use a cane. The fact that Dr. Wienecke gave Plaintiff a handicap placard could certainly reflect that he was temporarily relieving her of the need to walk significant distances but it does not reflect his opinion and/or instructions that she needed a cane to safely and/or effectively ambulate. Finally, and by the same token, Dr. Pelofsky's December 27, 2006, notation that Plaintiff was still using a cane, *id.,* citing Tr. 231, is an observation and not an opinion that she needs to do so.

In summary, no medical source has offered the opinion – through prescription or otherwise – that Plaintiff required the use of a cane.[6] The ALJ carefully considered Plaintiff's testimony regarding her need for a cane in light of the objective medical evidence, including Dr. Pelofsky's finding on examination that there was no evidence of an active radiculopathy or myelopathy by December 27, 2006, even though Plaintiff was still using a cane to walk [Tr. 17 and 231]. Moreover, in analyzing the credibility of Plaintiff's statements,[7] the ALJ specifically noted that while Plaintiff testified that she walks with a cane, "after a thorough review of the medical evidence a prescription for the cane was not found." [Tr. 18].[8] *See Lecour v. Apfel,* 185 F.3d 874, at *2 (10th Cir. Jun. 29, 1999). The ALJ's determination that Plaintiff was not functionally limited by the required use of a cane is well-supported by the evidence of record and, consequently, both the RFC assessment and resulting hypothetical questions to the vocational expert are legally and factually sound.[9]

---

[6]This includes Plaintiff's physical therapist. *See* Doc. No. 21, pp. 6 - 7.

[7]As was previously referenced, the ALJ's decision reflects Plaintiff's testimony that she used a cane prescribed by her doctor [Tr. 16].

[8]In her reply brief, Plaintiff argues that "[i]n the event the ALJ was skeptical of the Claimant's need to use the cane, he should have contacted Dr. Pelofsky to determine whether or not the cane was needed." [Doc. No. 23, p. 2]. A court will not ordinarily consider an issue – such as a requirement to recontact a treating physician – that is raised for the first time by reply brief. *Sloan v. Astrue,* 2008 WL 2561102, at *3, n 1(D. Kan. Jun. 26, 2008).

[9]Plaintiff cites a regulation pertaining to listed musculoskeletal impairments which acknowledges that "[t]he requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R., Part 404, Subpart P, Appendix 1, 1.00J(4). [Doc. Nos. 21, p. 7 and 23, p. 1]. As has been determined, however, there was no such "requirement" in this case.

**Conclusion**

The decision of the Commissioner is affirmed. Judgment will be entered accordingly.

**IT IS SO ORDERED** this 12th day of August, 2008.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE